```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
KATHLEEN M. MUSTICO,

                        Plaintiff,                    DECISION
                                                      and ORDER
            v.
                                                      08-CV-6028T
CONTINENTAL CASUALTY COMPANY
d/b/a CNA, and HARTFORD LIFE
AND ACCIDENT INSURANCE COMPANY,

                        Defendants.
_____
```

INTRODUCTION

Plaintiff Kathleen Mustico ("Mustico") brings this action pursuant to the Employee Retirement and Income Security Act of 1974 claiming that she was wrongfully denied long term disability benefits by the defendants, Continental Casualty Company, ("Continental") and Hartford Life and Accident Insurance Company ("Hartford"). Specifically, plaintiff claims that while she was covered by a long term disability insurance plan issued by Continental and administered by Hartford, she became completely disabled following an automobile accident. She claims that the defendants wrongfully denied her claim for benefits.

The defendants deny plaintiff's allegations, and move for summary judgment on grounds that there are no material questions of fact in dispute, and that as a matter of law, they are entitled to judgment in their favor. In support of their motion, defendants contend that their decision to deny plaintiff benefits was based on a reasonable interpretation of the medical evidence available to

them and that the decision is supported by substantial evidence contained in the record. Plaintiff opposes the defendants' motion, and cross-moves for summary judgment arguing that the medical evidence demonstrates that she is totally disabled.

For the reasons set forth below, I grant defendants' motion for summary judgment, and deny plaintiff's cross-motion for summary judgment.

BACKGROUND

I.  Medical Background

On June 19, 2000, plaintiff Kathleen Mustico became employed as an executive assistant by the Chemung County, New York, ARC, (the "ARC of Chemung County" or "Chemung County ARC") an advocacy organization for persons with developmental disabilities. As an executive assistant, plaintiff was responsible for providing administrative support to the Director of the organization and its Board of Directors.

On January 2, 2001, plaintiff was involved in a motor vehicle accident. Plaintiff was wearing a seatbelt at the time of the accident, did not lose consciousness during or after the accident, and her airbag did not deploy. Following the accident, plaintiff sought treatment at a local hospital emergency room. According to the emergency room report, plaintiff complained of neck pain, but exhibited no bruising, swelling or redness. X-rays revealed degenerative changes in her cervical spine, but no changes due to

trauma. She did show signs of a bruise in her chest area. Plaintiff was discharged from the emergency room with no work restrictions.

Thereafter, on January 5, 2001, plaintiff attempted to return to work, but was unable to remain there more than three or four hours due to discomfort caused by back and neck pain. Plaintiff never returned to work after January 5, 2001, and on April 2, 2001, her employment with the Chemung County ARC was terminated.

On February 14, 2001, plaintiff went to the emergency room of Arnot Ogden Medical Center complaining of dizziness, neck pain, and headaches. Dr. Naber examined the plaintiff, and noted that she had some discomfort in her neck. A CT scan of plaintiff's neck and back again revealed degenerative changes, but no changes due to traumatic injury. Plaintiff was discharged from the emergency room with no work restrictions.

In March, 2001, plaintiff saw a neurologist, Dr. Bhat, who opined that plaintiff suffered from whiplash and considerable musculo-ligamentous injuries. He did not, however, place plaintiff on any work restrictions. Shortly thereafter, plaintiff saw Dr. Madden, a pain specialist. Dr. Madden noted that plaintiff complained of dizziness, weakness, insomnia, and numbness which pre-dated her January, 2001, motor vehicle accident. Indeed, an MRI of her lumbar spine taken in November, 2000 (two months prior to her motor vehicle accident) revealed early disc desiccation and

mild bulging at discs L3-4 and L2-3.  Dr. Madden diagnosed plaintiff as suffering from several chronic conditions including chronic fibromyalgia, headaches, pain syndrome, and neck and back pain.  Despite these conditions, Dr. Madden did not place any work restrictions on the plaintiff that would prevent her from performing her job as an administrative assistant.

Also in March, 2001, plaintiff saw Dr. Pilcher, a neurosurgeon, who noted that MRI's of plaintiff's cervical spine revealed bulging a C4-5, C5-6, and C6-7.  He opined that there was no compression or narrowing at these locations, and that plaintiff had "excellent" range of motion in her cervical and lumbar spines. Dr. Pilcher noted no disc herniation, and did not recommend surgery.  He placed no work restrictions on the plaintiff that would prevent her from performing her duties as an executive assistant, which consisted of secretarial duties.  Following further imaging of plaintiff's neck and back, plaintiff again saw Dr. Pilcher on May 18, 2001.  He noted minimal degenerative changes in the cervical spine, with minor bulging at C5-6.  He also noted minor bulging in two areas of the lumbar spine.  He opined that plaintiff suffered from severe musculoskeletal pain after the January, 2001 automobile accident, but did not recommend surgical intervention.  He placed no restrictions on plaintiff that would prevent her from working as an executive assistant.

Another pain management specialist, Dr. Hong, saw the plaintiff on June 6, June 11, and June 26, 2001. Dr. Hong noted normal neck movement, but weakness in her extremities due to pain. He diagnosed her as suffering from, <u>inter</u> <u>alia</u>, myofascial pain syndrome and cervical degenerative disc disease. He did not place any limitations on plaintiff's ability to work as an administrative assistant.

On July 2, 2001, plaintiff saw Dr. Kung, a neurosurgeon. Dr. Kung reviewed a CT scan of plaintiff's lumbar spine taken June 27, 2001, and determined that it was "normal." He ordered a discogram of plaintiff's cervical spine, which, according to the plaintiff, came back "positive."

On August 13, 2001, plaintiff went to the emergency room of Arnot Ogden Medical Center with complaints of severe neck pain and headaches. Two days later, she was admitted to the hospital By Dr. Kung, who attempted to alleviate her pain with non-surgical intervention. Plaintiff, however, remained in pain, and therefore, on August 21, 2001, Mustico underwent a diskectomy at C5 and C6-7, and spur removal at C5 and C6.

Following surgery, plaintiff continued to have pain and numbness in her extremities, as well as severe headaches. After several visits to doctors and emergency rooms, plaintiff, in July, 2002, had a posterior spinal fusion at L4, 5, and S1.

5

Plaintiff thereafter applied for Social Security Disability benefits. Following a hearing in August, 2004, plaintiff was awarded Social Security Disability benefits with an onset date of January 2, 2001, the date of her automobile accident.

II. <u>Procedural History</u>

Pursuant to her employment with the ARC of Chemung County, Mustico was enrolled in a Long Term Disability Plan provided by her employer. In general, pursuant to the terms of the policy, an employee could qualify for Long Term Disability Benefits if the employee became disabled during his or her employment. An employee became "disabled," in relevant part, if, during an "elimination period" and the following 24 months, she suffered an injury or sickness that caused her to be continuously unable to perform the material and substantial duties of her regular occupation. In the instant case, the "elimination period" was the first 90 days that plaintiff claimed she was unable to work.

Although plaintiff's automobile accident occurred on January 2, 2001, and her employment was terminated on April 2, 2001, plaintiff did not apply for Long Term Disability benefits until March 6, 2002, over fourteen months after the allegedly disabling injury occurred. A claim examiner for defendant Continental reviewed medical evidence provided by the plaintiff with her claim, and on August 27, 2002, advised the plaintiff by letter that Continental required additional information in order to process her

6

claim. According to the defendants, plaintiff failed to provide the requested information, and as a result, the claim was closed.

Plaintiff contends that she responded to the defendants request by providing the requested information in writing in September 2002, but that the defendants never responded to the submissions she provided. According to the plaintiff, despite not receiving any correspondence from Continental,[1] she did not check on the status of her claim at any time during 2003, 2004, or 2005. On June 6, 2006, however, plaintiff, through her husband, an attorney, sent a fax to Continental inquiring as to the status of her application. Defendant Hartford, in separate letters, responded to plaintiff's request by noting that the plaintiff's deadline for submitting a proof-of-loss had passed, and that Hartford was prejudiced by the plaintiff's delay in submitting the required information. Nevertheless, while preserving its rights to deny plaintiff's claim as untimely, Hartford advised the plaintiff that upon receipt of all required records and information, it would reinstate its investigation of plaintiff's claim.

Upon receipt of plaintiff's medical records dating from January 2, 2001, a Hartford nurse consultant reviewed plaintiff's claim to determine whether or not she was entitled to benefits

---

[1] Continental claims that because it had not received information from the plaintiff, it sent a follow-up letter to the plaintiff that was returned as undeliverable, and sent a fax to the plaintiff that was not responded to.

7

under the policy. Although the nurse consultant determined that plaintiff had not suffered from a continuous functional impairment the prevented her from working as a secretary/executive assistant during the elimination period of the policy, she recommended that the plaintiff's records be submitted to an independent medical reviewer for determination as to plaintiff's functional ability during the elimination period and thereafter.

Independent Medical Examiner Dr. William Sniger, a specialist in spinal cord injuries and physical rehabilitation, reviewed the plaintiff's entire medical record, and determined that the preponderance of the evidence did not support a finding that plaintiff was unable to perform the functions of her job during the elimination period of the policy, or at any time that she was employed by the Chemung County ARC. Based on the opinions of the independent medical examiner and the nurse consultant, on August 30, 2006, Hartford denied plaintiff's claim for benefits.

Plaintiff appealed the determination to an Appeals Specialist employed by Hartford. Upon reviewing the file, including information regarding plaintiff's successful claim for Social Security Disability benefits, the Appeals Specialist referred the case for a second independent medical review. Dr. Andrea Wagner, a physical rehabilitation specialist, reviewed the plaintiff's medical file, and determined that the evidence did not support a finding that plaintiff suffered from a continuous functional

impairment dating from January 2, 2001 and ongoing through the elimination period that would have prevented her from performing her job as and executive assistant. Based on these medical findings, the Appeals Specialist upheld the denial of plaintiff's claim for benefits, which constituted Hartford's final determination. Plaintiff thereafter filed the instant action.

DISCUSSION

I. The Defendants' Motion for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." When considering a motion for summary judgment, all genuinely disputed facts must be resolved in favor of the party against whom summary judgment is sought. Scott v. Harris, 550 U.S. 372, 380 (2007). If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate. Scott, 550 U.S. at 380 (citing Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587 (1986).

II. <u>Standard of Review of the Plan Administrator's Benefits Determination</u>

The plaintiff alleges that the defendants violated ERISA when they denied her application for long term disability benefits under the Chemung County ARC Long Term Disability Plan. When considering an ERISA claim such as this, the Court must first determine the appropriate standard of review to conduct its analysis. The Supreme Court has held that:

> "a denial of benefits challenged under [ERISA] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or construe the terms of the plan."

<u>Firestone Tire and Rubber Co., v. Bruch</u>, 489 U.S. 101, 115 (1989). If a plan grants the plan administrator discretionary authority to determine eligibility, the Second Circuit has held that an arbitrary and capricious standard of review will be applied. <u>Kinstler v. First Reliance Standard Life Ins. Co.</u>, 181 F.3d 243, 249-252 (2d Cir. 1999). Under the arbitrary and capricious standard, a denial of benefits "may be overturned only if the decision is 'without reason, unsupported by substantial evidence or erroneous as a matter of law." <u>Kinstler</u>, 181 F.3d at 249 (2d Cir. 1999), quoting <u>Pagan v. NYNEX Pension Plan</u>, 52 F.3d 438, 442 (2d Cir. 1995); <u>Fuller v. J.P. Morgan Chase & Co.</u>, 423 F.3d 104, 107 (2nd Cir. 2005). To establish that a Plan Administrator's decision is supported by "substantial evidence,"

the administrator must demonstrate that the decision is supported by "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [administrator] . . . ." Celardo v. GNY Automobile Dealers Health and Welfare Trust, 318 F.3d 142, 146 (2nd Cir. 2003). There must be more then a "scintilla" of evidence to support the Plan Administrator's decision, but there need not be a preponderance of the evidence, provided the evidence relied upon by the Plan Administrator is reliable. Ceraldo, 318 F.3d 146 (citing Miller v. United Welfare Fund, 72 F.3d 1066, 1072 (2nd Cir 1995).

In the instant case, there is no dispute that the plan administrator is clearly vested with the discretion to determine eligibility for benefits provided under the plan, and therefore, I find that the arbitrary and capricious standard of review applies.

III. The Plan Administrator's Decision Denying Benefits to the Plaintiff was neither Arbitrary nor Capricious.

To be entitled to Long Term Disability benefits under the Chemung County ARC LTD Plan, an employee must become "disabled" while covered under the plan. An employee becomes "disabled" in relevant part if, because of sickness or injury, she is continuously unable to perform the material and substantial duties of her regular occupation during an "elimination period" and the 24 months following the elimination period. The "elimination period" is the number of days at the beginning of a continuous period of disability during which no benefits are payable. In the case of

11

the Chemung County LTD Plan, the elimination period is the first 90 days of an employee's continuous period of disability.

Accordingly, to be entitled to benefits, Mustico was required to establish that she was continuously disabled for a 90 day period commencing on either January 2, 2001, or any other date prior to April 2, 2001, the date on which her coverage under the plan ended due to the termination of her employment. The defendants determined that Mustico had not demonstrated that she was continuously disabled during the elimination period (or for much of the time during the 24 month period following the elimination period), and therefore denied her application for benefits. For the reasons set forth below, I find that the defendants' determination was based on substantial evidence, and was neither arbitrary nor capricious.

In reviewing the plaintiff's claim for benefits, the defendants reviewed all medical information provided to them by the plaintiff. In addition to claims reviewers, the defendants utilized a nurse consultant, and two independent medical reviewers to review the entire medical file. In doing so, the medical reviewers noted that although plaintiff had seen several doctors, including neurologists, neuro-surgeons, pain specialists, and emergency room physicians following her January, 2001 automobile accident until the date of her first surgery in August, 2001, not one of these physicians imposed work restrictions on the plaintiff

during the elimination period that would have prevented her from working as an executive assistant. Dr. Naber, an emergency room physician, examined the plaintiff on February 14, 2001, but did not impose any work restrictions that would have prevented her from working as an executive assistant. Dr. Bhat, a neurologist who examined the plaintiff in March, 2001, did not place plaintiff on any work restrictions. Similarly, Dr. Madden, a pain specialist, did not place any work restrictions on the plaintiff that would prevent her from performing her job as an administrative assistant. Dr. Pilcher, a neurosurgeon, also examined the plaintiff in March, 2001, but did not place any restrictions on plaintiff that would have prevented her from working as an executive assistant. Dr. Hong saw the plaintiff on June 6, June 11, and June 26, 2001, and did not place any limitations on plaintiff's ability to work as an administrative assistant. Finally, in July, 2001, plaintiff saw neurosurgeon Dr. Kung, who did not place any work restrictions on the plaintiff which would have prevented her from working as an executive assistant.

The defendants, however, in determining whether or not the plaintiff was disabled during the elimination period, did not merely rely on the lack of work restrictions that were placed on the plaintiff during the elimination period. Rather, Hartford, conducted a through exam of the medical evidence pertaining to the plaintiff's condition during the elimination period. While this

13

undertaking was made more difficult by the fact that plaintiff did not apply for benefits until 14 months after her accident, and did not supply complete medical records until 2006, over five years after the accident, nevertheless, the defendants did conduct a thorough and searching examination of the file. The conclusions of independent medical reviewers Drs. Sniger and Wagner that the plaintiff was not continuously functionally impaired from performing her work duties during the elimination are completely consistent with the medical evidence in the record. That evidence demonstrated, inter alia, that plaintiff's automobile accident did not result in trauma to her spine and that plaintiff suffered from headaches, weakness in her extremities, and numbness prior to her accident, none of which prevented her from working as an executive assistant, a job which is sedentary, requiring the ability to sit and stand, but not requiring the lifting or manipulating of heavy objects. In March, 2001, Dr. Pilcher noted that the plaintiff had excellent range of motion, and MRI's taken during that time revealed only degenerative changes. While Mustico did continue to suffer from headaches dizziness and weakness, none of her doctors indicated that these conditions were of such severity that they would prevent her from working. See e.g., Donato v. Secretary, 721 F.2d 414, 418-419 (2nd Cir. 1983)(though subjective complaints of pain may be considered by the plan administrator, they are ordinarily insufficient to establish the existence of a

disability). Because the objective evidence in the record does not support a finding that plaintiff was continuously functionally impaired from performing her duties as an administrative assistant during the elimination period, I find that defendants' decision to deny plaintiff's claim for benefits was neither arbitrary nor capricious.

IV. <u>Plaintiff's remaining objections are without merit</u>

Plaintiff claims that the defendants' denial of her claim was deficient for several reasons. Initially, plaintiff complains that the defendants never conducted, or ordered to be conducted, a physical examination of the plaintiff. While in many cases a physical examination might be beneficial to the plan administrator in determining whether or not a claimant is entitled to benefits under the plan, the plan administrator is under no obligation to undertake such an examination. <u>Zoller v. INA Life Ins. Co. of New York</u>, 2008 WL 3927462 *13 (S.D.N.Y., August 25, 2008)(plan administrator may rely on opinion of non-examining independent medical reviewer, even where medical reviewer's opinion conflicts with opinions of treating physicians). Moreover, in this case, because the plaintiff did not apply for benefits until 14 months after her car accident, and did not supply complete medical records until five 2006, more than five years after the evidence, it is unlikely that a physical examination conducted in 2006 would have

yielded any relevant evidence as to the plaintiff's condition in 2001, during the elimination period.

Plaintiff further contends that the plan administrator failed to consider plaintiff's subjective complaints of pain. As stated above however, subjective complaints of pain are ordinarily insufficient to establish the existence of a disability. Donato, 721 F.2d 414, 418-419 (2nd Cir. 1983).

With respect to plaintiff's claim that the defendants did not provide a full and fair review of plaintiff's claim, I find this contention to be wholly without merit. Despite the fact that Hartford could have denied plaintiff's claim on administrative grounds for untimeliness and/or prejudicial delay, the defendant undertook a thorough substantive review of the plaintiff's complete file, including medical information generated well after the elimination period. Moreover, the plan administrator sought opinions from two independent medical examiners, and sought one of those opinions after it had received an opinion stating that the plaintiff was not disabled during the elimination period. I thus find that the defendants provided a full and fair of the plaintiff's claim.

Plaintiff notes several times in her papers that she was adjudicated as disabled by the Social Security Administration in 2004. It is well settled, however, that the disability determination of the Commissioner of Social Security has no bearing

on the disability determination of a plan administrator. Pagan, 846 F.Supp at 21 (S.D.N.Y. 1994). As to plaintiff's remaining objections, including plaintiff's suggestion that the defendants suffered from a conflict of interest, I find those claims to be without merit. Accordingly, I find that the plan administrator's decision to deny plaintiff's claim was based on substantial evidence, and I therefore grant defendant's motion for summary judgment, and deny plaintiff's cross-motion for summary judgment.

## CONCLUSION

For the reasons set forth above, I find that the Plan Administrator's decision to deny long-term disability benefits to plaintiff Kathleen Mustico was neither arbitrary nor capricious. Accordingly, I grant the defendants' motion for summary judgment, and deny plaintiff's cross-motion for summary judgment.

ALL OF THE ABOVE IS SO ORDERED.

S/ Michael A. Telesca

MICHAEL A. TELESCA
United States District Judge

Dated:   Rochester, New York
         September 25, 2009